UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LESTER JON RUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-2314 (RMU) |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, by its undersigned attorneys, respectfully moves the Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order granting summary judgment on the grounds that there exists no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.[1]  In

---

[1]  Plaintiff should take notice that any factual assertions contained in the declarations submitted in support of this motion will be accepted by the Court as true unless plaintiff submits his own affidavit or other documentary evidence contradicting those assertions.  See Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); L. Cv. R. 7(h).  Rule 56(e) of the Federal Rules of Civil Procedure provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the

(continued...)

-2-

support of this motion, the Court is respectfully referred to the
Declaration of Averill P. Graham, Chief, Disclosure Division,
Bureau of Alcohol, Tobacco, Firearms, and Explosives, United
States Department of Justice; to Defendant's Statement of
Material Facts as to Which There is No Genuine Issue; and to the
Memorandum of Points and Authorities in Support of Defendant's
Motion for Summary Judgment, all filed herewith.

                              Respectfully submitted,


                              _____
                              KENNETH L. WAINSTEIN
                              (DC Bar #451058)
                              United States Attorney


                              _____
                              RUDOLPH CONTRERAS
                              (DC Bar #434122)
                              Assistant United States Attorney


                                        /s/
                              _____
Dated:  April 19, 2006        JOSHUA T. RAINES
                              Attorney-Advisor
                              Office of Information and Privacy
                              United States Department of Justice
                              1425 New York Ave., NW, Suite 11050
                              Washington, DC  20530-0001
                              (202) 307-3997

_____

(...continued)
     adverse party's response, by affidavits or as otherwise
     provided in this rule, must set forth specific facts
     showing that there is a genuine issue for trial.  If
     the adverse party does not so respond, summary
     judgment, if appropriate, shall be entered against the
     adverse party.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LESTER JON RUSTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   Civil Action No. 05-2314 (RMU) |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, | ) |
|   FIREARMS AND EXPLOSIVES, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

DEFENDANT'S STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE, PURSUANT TO LOCAL CIVIL RULE 7(h)

Pursuant to Local Civil Rule 7(h), defendant submits the following statement of material facts as to which there is no genuine issue:

1. By letter dated July 5, 2005, plaintiff submitted a request to the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. III 2003). (See Declaration of Averill P. Graham, Chief, Disclosure Division, ATF, United States Department of Justice [hereinafter Graham Decl.], filed herewith, ¶ 4 & Ex. A.) Plaintiff sought access to "[a]ll official and unofficial records, documents, and/or data contained in the files of your agency with regards to an employee . . . named Joanna Shropshire[.]" (Id.)

2. By letter dated July 26, 2005, ATF informed plaintiff that it had received his request on July 25, 2005, and it assigned it request number 05-1379. (See id. ¶ 5 & Ex. B.)

-2-

3.  By letter dated August 8, 2005, ATF informed plaintiff that, without a privacy waiver or proof of death, it refused to confirm or deny the existence of records concerning the subject of his request.  (See id. ¶ 6 and Ex. C.)  ATF's response letter also advised plaintiff of his administrative appeal rights.  (See id.)

4.  By letter dated August 15, 2005, plaintiff appealed ATF's August 8, 2005 determination to the Office of Information and Privacy (OIP), the Department of Justice's appellate authority for FOIA matters.  (See id. ¶ 7 & Ex. D.)

5.  By letter dated August 31, 2005, OIP informed plaintiff that it had received his appeal on August 25, 2005, and it assigned it appeal number 05-2640.  (See id. ¶ 8 & Ex. E.)

6.  By letter dated September 26, 2005, OIP affirmed ATF's August 8, 2005 determination.  (See id. ¶ 9 & Ex. F.)

7.  Prior to his request of July 5, 2005, plaintiff submitted a similar request for records concerning Joanna Shropshire to ATF's Dallas Field Division by letter dated September 6, 2000.  (See id. ¶ 12.)

8.  By letter dated September 18, 2000, ATF's Dallas Division Director informed plaintiff that his request was being forwarded to ATF's Disclosure Division for processing.  (See id. ¶ 12 & Ex. G.)  The Dallas Division Director also noted that although plaintiff had requested records concerning "'Joanna

-3-

Shropshire of your staff' . . . the Bureau does not have a Joanna Shropshire in its employment." (Id.)

9. Plaintiff commenced this action on November 18, 2005. (See Complaint, filed Dec. 1, 2005.) Subsequent to the filing of plaintiff's Complaint, an attorney with ATF's Office of Chief Counsel consulted with ATF's Office of Management, Human Resources Division, and directed a human resources specialist to query the National Finance Center's (NFC) personnel database to determine if and when an individual named Joanna Shropshire was employed by ATF. (See id. ¶ 13.)

10. The NFC database is used by ATF to locate personnel records and contains the names of past and present ATF employees. (See id. ¶ 14.) The NFC database is the sole method by which ATF can locate personnel records by using a computerized name query. (See id.)

-4-

11.  A query of the NFC database under the name Joanna
Shropshire produced no results.  (<u>See</u> <u>id.</u> ¶ 15.)  In other words,
ATF does not have, and never has had, an employee by the name of
Joanna Shropshire.  (<u>See</u> <u>id.</u>)

                              Respectfully submitted,


                              _____
                              KENNETH L. WAINSTEIN
                              (D.C. Bar #451058)
                              United States Attorney


                              _____
                              RUDOLPH CONTRERAS
                              (DC Bar #434122)
                              Assistant United States Attorney


                                        /s/
                              _____
Dated:  April 19, 2006        JOSHUA T. RAINES
                              Attorney-Advisor
                              Office of Information and Privacy
                              United States Department of Justice
                              1425 New York Ave., NW, Suite 11050
                              Washington, D.C.  20530-0001
                              (202) 307-3997

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
LESTER JON RUSTON,             )
                              )
      Plaintiff,               )
                              )
      v.                       )    Civil Action No. 05-2314 (RMU)
                              )
BUREAU OF ALCOHOL, TOBACCO,    )
   FIREARMS AND EXPLOSIVES,     )
                              )
      Defendant.               )
_____)
```

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Preliminary Statement

Plaintiff commenced this action pro se on November 18, 2005, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. III 2003), seeking the release of any records concerning a named person, Joanna Shropshire, that might be maintained by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). On January 28, 2006, plaintiff moved for summary judgment. On February 8, 2006, defendant opposed plaintiff's "Motion for Summary Judgement," and requested that the Court deny it, without prejudice. By Order dated February 17, 2006, the Court denied plaintiff's "Motion for Summary Judgement," without prejudice, and ordered defendant to file a dispositive motion or proposed briefing schedule within thirty days. Defendant filed a proposed briefing schedule on March 20, 2006, proposing that defendant would file a motion for summary judgment by April 19, 2006. The Court approved this proposed

- 2 -

briefing schedule by Order dated March 21, 2006.  Accordingly,

defendant now moves for summary judgment.

Based upon the accompanying Declaration of Averill P.

Graham, Chief, Disclosure Division, ATF, United States Department

of Justice [hereinafter Graham Declaration], and the entire

record herein, and for the reasons set forth below, defendant

respectfully submits that there exists no genuine issue of

material fact and that it is entitled to judgment as a matter of

law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

<u>Factual and Procedural Background</u>

By letter dated July 5, 2005, plaintiff submitted a FOIA

request to defendant seeking access to "[a]ll official and

unofficial records, documents, and/or data contained in the files

of your agency with regards to an employee . . . named Joanna

Shropshire[.]"  (Graham Decl. ¶ 4 & Ex. A.)  By letter dated

August 8, 2005, defendant informed plaintiff that without a

privacy waiver or proof of death, it refused to confirm or deny

the existence of records concerning the subject of plaintiff's

request (commonly referred to as a "Glomar" response).[1]  (<u>See</u> <u>id.</u>

¶¶ 6, 10 & Ex. C.)  Defendant's response letter also advised that

plaintiff had the right to appeal its decision to the Office of

---

[1] This term stems from the case of <u>Phillippi v. CIA</u>, 546
F.2d 1009 (D.C. Cir. 1976), which concerned a request for records
about the <u>Glomar Explorer</u> (a ship allegedly used by the CIA) in
response to which the CIA refused to confirm or deny the
existence of responsive records.

- 3 -

Information and Privacy (OIP), the Department of Justice's
appellate authority for FOIA matters.  (See id. ¶¶ 6-7 & Ex. C.)

       By letter dated August 15, 2005, plaintiff filed an
administrative appeal with OIP.  (See id. ¶ 7 & Ex. D.)  By
letter dated September 26, 2005, OIP affirmed ATF's use of the
Glomar response refusing to confirm or deny the existence of
records concerning the subject of plaintiff's request.  (See id.
¶ 9 & Ex. F.)

       In addition to his July 5, 2005 request for records
concerning an individual named Joanna Shropshire, plaintiff also
requested records on the same named subject from defendant's
Dallas Field Division by letter dated September 6, 2000.  (See
id. ¶ 12.)  By letter dated September 18, 2000, ATF's Dallas
Division Director informed plaintiff that although plaintiff had
requested records concerning "'Joanna Shropshire of your staff'
. . . the Bureau does not have a Joanna Shropshire in its
employment."  (Id. ¶ 12 & Ex. G.)

       Additionally, subsequent to the commencement of this action,
an attorney with ATF's Office of Chief Counsel consulted with
ATF's Office of Management, Human Resources Division, and
directed a human resources specialist to query the National
Finance Center's (NFC) personnel database to determine if the
subject of plaintiff's request was (or ever had been) employed by
ATF.  (See id. ¶ 13.)  The NFC database is used by ATF to locate

- 4 -

personnel records.  (<u>See</u> <u>id.</u> ¶ 14.)   It contains the names of
past and present ATF employees, and is defendant's only means of
locating personnel records by using a computerized name query.
(<u>See</u> <u>id.</u>)   A query of the NFC database under the name Joanna
Shropshire produced no results, indicating that a person named
Joanna Shropshire is not, nor has ever been, employed by ATF.
(<u>See</u> <u>id.</u> ¶ 15.)

<u>Argument</u>

<u>NO AGENCY RECORDS HAVE BEEN IMPROPERLY WITHHELD</u>

I.  <u>The Glomar Response and an Agency's Responsibility to
Bifurcate</u>

This case implicates Exemption 7(C) of the FOIA, 5 U.S.C.
§ 552(b)(7)(C), which protects the privacy of third parties
mentioned in law enforcement records.  Pursuant to this
exemption, "a Glomar response may be issued in place of a
statement acknowledging the existence of responsive records but
withholding them, if confirming or denying the existence of the
records would associate the individual named in the request with
criminal activity."  <u>Nation Magazine v. U.S. Customs Serv.</u>, 71
F.3d 885, 893 (D.C. Cir. 1995).  "When a FOIA request seeks more
than just law-enforcement files, however, the agency must take a
'bifurcated' approach."  <u>Burke v. U.S. Dep't of Justice</u>, No. 96-
1739, 1999 WL 1032814, at *5 (D.D.C. Sept. 30, 1999).  Because
plaintiff's request potentially seeks more than law enforcement
records, defendant bifurcates its response to plaintiff's

- 5 -

request.

In this case, plaintiff seeks both law enforcement and, potentially, employment records concerning an individual named Joanna Shropshire, who plaintiff claims in his request is (or was) an ATF employee.[2]  Because certain information related to government employees must be released -- see, e.g., 5 C.F.R. § 293.311 (2006) (Office of Personnel Management regulation specifying that certain information contained in federal employee personnel files is available to public); see also, e.g., Core v. U.S. Postal Serv., 730 F.2d 946, 948 (4th Cir. 1984) (finding no substantial invasion of privacy in information identifying successful federal job applicants); Nat'l W. Life Ins. v. United States, 512 F. Supp. 454, 461 (N.D. Tex. 1980) (discerning no expectation of privacy in names and duty stations of Postal Service employees) -- and plaintiff has requested the records of a person whom he believes defendant has employed, (see Graham Decl. ¶ 4 & Ex. A; Complaint, filed Dec. 1, 2005, at 2),

---

[2] Plaintiff's request letter is clear that he seeks information on an ATF employee, but mentions "investigation reports," states that he has "probable cause to believe [Joanna Shropshire] was . . . engaged in organized criminal activity," and labels Joanna Shropshire a "suspect."  (Graham Decl. Ex. A.) Likewise, plaintiff's appeal letter states that the subject of his request was "engaged in organized criminal activity" and that she was part of a "criminal conspiracy to violate the privacy rights of" plaintiff, adding that "ATF is allowing criminal activity by low level personnel."  (See id. Ex. D.)  Defendant therefore must construe plaintiff's request as essentially encompassing two types of records:  law enforcement and employment records.

- 6 -

defendant bifurcates its response to plaintiff's FOIA request,
addressing separately the aspects of the request that seek law
enforcement records and employment records.

The United States Court of Appeals for the District of
Columbia Circuit explicitly approved such an approach in Nation
Magazine.  In that case, the FOIA requester sought records
concerning an offer by billionaire and then-presidential
candidate H. Ross Perot to assist the United States Customs
Service in its drug-interdiction efforts.  See 71 F.3d at 887.
In response, the Customs Service refused to confirm or deny the
existence of responsive records in its law enforcement
investigatory files and informed the requester that there were no
responsive records in its non-investigatory files.  See id. at
888.  The Court of Appeals held that the Glomar response was
appropriate only as to the existence of such records that would
associate Perot with any criminal activity, but not with respect
to records concerning his well-publicized offers of assistance,
thus necessarily bifurcating within plaintiff's FOIA request.
See id. at 894-96.  On remand, the District Court found that the
Glomar response as to whether Perot was a subject, witness, or
informant in any law enforcement investigation was appropriate
after the agency searched law enforcement files for records
concerning Perot's efforts to assist the agency.  See Nation
Magazine v. U.S. Customs Serv., 937 F. Supp. 39, 45 (D.D.C.

- 7 -

1996); see also Burke, 1999 WL 1032814, at *5; Grove v. Dep't of Justice, 802 F. Supp. 506, 510-14 (D.D.C. 1992) (approving Navy's bifurcation between "administrative documents" and those held by a criminal investigative component).

In accordance with these precedents, defendant bifurcates its response to plaintiff's FOIA request. (See Graham Decl. ¶ 11.) As discussed in more detail infra, defendant acknowledges that it could locate no employee record concerning a person named Joanna Shropshire. (See id. ¶¶ 11-15.) It is outside of the employment context, however, regarding ATF law enforcement records in general, that a significant privacy interest is implicated.

    II.   ATF Properly Refused to Confirm or Deny the
          Existence of Non-Employment Records Pursuant to
          5 U.S.C. § 552(b)(7)(C)

As this Court has held concerning bifurcated Glomar responses, for "the portion of the request seeking investigative law-enforcement files, the agency may simply assert a categorical Glomar response." Burke, 1999 WL 1032814, at *5. Invoking Exemption 7(C) of the FOIA, defendant asserts such a categorical response as to any law enforcement records concerning the subject of plaintiff's request. (See Graham Decl. ¶ 11.) Exemption 7(C) of the FOIA protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or

- 8 -

information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

To properly invoke Exemption 7(C), an agency must first demonstrate that the records in question, if they exist, were compiled for law enforcement purposes. See 5 U.S.C. § 552(b)(7); John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989); see also Quiñon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996). To satisfy this threshold requirement, an agency must show that the records were generated for the purpose of enforcing matters of civil, criminal, or administrative law. See, e.g., Tax Analysts v. IRS, 294 F.3d 71, 77 (D.C. Cir. 2003).

It is clear that, in this case, the threshold would be satisfied by non-employment records responsive to plaintiff's request, if any exist, due to the nature of the function of ATF as a law enforcement agency, (see Graham Decl. ¶ 18), and the type of records requested. Records that would have been created in relation to the criminal activities alleged by plaintiff, (see Graham Decl. Exs. A, D), would fall within the law enforcement duties of defendant, see 28 C.F.R. § 0.130 (2005), and accordingly would meet Exemption 7's threshold test of being created for law enforcement purposes. See 5 U.S.C. § 552(b)(7).

The remaining consideration under Exemption 7(C) is whether confirming or denying the existence of responsive law enforcement

- 9 -

records concerning the subject of plaintiff's request "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. at § 552(b)(7)(C). In most cases, this determination necessitates a balancing of the individual's right to privacy against the public's interest in disclosure. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762 (1989); see also SafeCard Servs. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991). However, no such balancing is necessary when a request seeks law enforcement records concerning a private individual if those records would not "shed[] light on [the] agency's performance of its statutory duties." Reporters Comm., 489 U.S. at 773. As the Supreme Court has held, such records are categorically exempt from disclosure under Exemption 7(C). See id. at 780 (holding "as a categorical matter" that a request seeking "law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and when that request seeks no 'official information' about a Government agency, . . . the invasion of privacy is unwarranted"); see also Nation Magazine, 71 F.3d at 893 (concluding that "where it is clear that the request will not contribute significantly to public understanding of the operations or activities of the government and seeks law enforcement information on private individuals, the court need not undertake a balancing test . . . before it decides that the

- 10 -

documents are exempt from disclosure").

Furthermore, and particularly significant here, the very
existence or nonexistence of law enforcement records concerning
private individuals is itself information that is exempt from
disclosure under Exemption 7(C).  See, e.g., Senate of P.R. v.
U.S. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987)
(finding that "[t]here is little question that disclosing the
identity of targets of law-enforcement investigations can subject
those identified to embarrassment and potentially more serious
reputational harm" and that "[o]ther persons involved in the
investigation--witnesses, informants, and the investigating
agents--also have a substantial interest in seeing that their
participation remains secret").  Therefore, when a FOIA request
seeks law enforcement records concerning a private individual, a
law enforcement agency such as ATF properly responds by refusing
to confirm or deny the existence of responsive records.  See,
e.g., Nation Magazine, 71 F.3d at 893 ("[A] Glomar response may
be issued in place of a statement acknowledging the existence of
responsive records but withholding them, if confirming or denying
the existence of the records would associate the individual named
in the request with criminal activity."); Antonelli v. FBI, 721
F.2d 615, 618 (7th Cir. 1983) (affirming the use of a Glomar
response, and stating that "revealing that a third party has been
the subject of FBI investigations is likely to constitute an

- 11 -

invasion of that person's privacy").

While defendant confirms that it could locate no records of an employee named Joanna Shropshire, and that it therefore has no releasable information concerning her employment, (see Graham Decl. ¶¶ 14-15), it is <u>not</u> known whether such a named person has a criminal record (as reflected by other responsive law enforcement records that might exist).  Acknowledgment of any such records concerning such a named person would constitute an invasion of privacy by potentially disclosing involvement with criminal acts that are unknown or long forgotten.  See <u>Reporters Comm.</u>, 489 U.S. at 762-63, 780 (applying a "practical obscurity" standard to withhold information contained in FBI "rap sheets" even though that information may have been available to the public at some place and point in time); <u>see also</u> <u>Nation Magazine</u>, 937 F. Supp. at 45 (finding that Glomar response as to whether Perot was subject, witness, or informant in law enforcement investigation appropriate after agency conventionally searched law enforcement files for less sensitive records); <u>Kimberlin v. U.S. Dep't of Justice</u>, 139 F.3d 944, 949 (D.C. Cir. 1998) (finding that even after subject's public acknowledgment of charges and sanction against him, he retained privacy interest in nondisclosure of "details of investigation, of his misconduct, and of his punishment, and . . . in preventing hitherto speculative press reports of his misconduct from receiving

- 12 -

authoritative confirmation from official source" (citing <u>Bast v.</u>
<u>U.S. Dep't of Justice</u>, 665 F.2d 1251, 1255 (D.C. Cir. 1981)).
Because even confirming the existence of non-employment (i.e.,
law enforcement) records concerning the subject of plaintiff's
request would constitute an invasion of privacy, defendant
respectfully suggests that it has properly used the Glomar
response to refuse to confirm or deny the existence of such
records.

    III.  Defendant Could Locate No Records Concerning an
           Employee Named Joanna Shropshire

     Concerning the portion of plaintiff's request that can be
construed as requesting employment records, defendant responds
that it has no responsive records because it has no record of
having employed an individual named Joanna Shropshire.  (<u>See</u>
Graham Decl. ¶¶ 11-12, 15.)  In response to a previous FOIA
request submitted by plaintiff, defendant informed plaintiff by
letter dated September 18, 2000 that it did not employ an
individual named Joanna Shropshire.  (<u>See</u> Graham Decl. ¶ 12 &
Ex. G.)  Additionally, subsequent to the filing of plaintiff's
Complaint, defendant searched for records concerning an employee
named Joanna Shropshire by using the National Finance Center's

- 13 -

personnel database.[3]  (See id. ¶¶ 14-15.)   This database includes

past and present employees, and is the only method by which

defendant can locate personnel records using a computerized name

query.  (See id. ¶ 14.)   A search for records concerning an

employee named Joanna Shropshire produced no results.  (See id.

¶ 15.)   This search result confirmed the Dallas Division

Director's previous assertion that defendant has not employed an

individual by the name of Joanna Shropshire.  (See id.)

Defendant's search for records concerning an employee named

Joanna Shropshire was reasonable and adequate, fulfilling its

duties to undertake "a good faith effort to conduct a search for

the requested records, using methods which can be reasonably

expected to produce the information requested."  Oglesby v. U.S.

Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); see also

Burke, 1999 WL 1032814, at *5 (stating that when an agency uses a

bifurcated Glomar response, it must demonstrate that an adequate

search was conducted for non-law enforcement files).  Defendant

respectfully suggests that it therefore has fulfilled its

obligations in response to plaintiff's FOIA request in all

respects.

---

[3] The National Finance Center, administered by the United
States Department of Agriculture, "provides centralized,
automated, integrated systems and support services for payroll,
personnel, administrative payments, accounts receivable, property
management, budget, and accounting activities."  About NFC,
http://dab.nfc.usda.gov/about/na-aboutmain.html (last visited
Apr. 18, 2006).

- 14 -

<u>Conclusion</u>

For the foregoing reasons, and based on the entire record herein, defendant respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar #434122)
Assistant United States Attorney


Dated:  April 19, 2006     _____/s/_____
JOSHUA T. RAINES
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC  20530-0001
(202) 307-3997